UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BERNARD SLOANE GLIEBERMAN,

    Debtor,

_____/

BERNARD SLOANE GLIEBERMAN,

    Appellant,

vs.

BR NORTH 223, LLC,

    Appellee.

_____/

Case No. 16-13552
HON. GEORGE CARAM STEEH

Chapter 7 Case No. 15-55996

ORDER DENYING APPEAL AND AFFIRMING
BANKRUPTCY COURT'S SEPTEMBER 20, 2016 ORDER

This is an appeal from a final order of the Eastern District of Michigan Bankruptcy Court, compelling production of documents, finding Debtor Bernard Sloane Glieberman in contempt of court and imposing sanctions "Contempt Order") (Bankr. Dkt. No. 162). The Contempt Order held Debtor in contempt of the Bankruptcy Court for willfully failing to comply with the Bankruptcy Court's August 24, 2016 order compelling production of documents and imposed a $2,000 sanction. Debtor argues on appeal that

- 1 -

the Bankruptcy Court deprived him of his due process rights by holding him contempt and levying sanctions on an expedited basis and without an evidentiary hearing, and erred in finding that he had possession, control or custody over the documents required to be produced.

STATEMENT OF FACTS

BR North ("Appellee") holds a judgment of over $81 million against Debtor and is his single largest creditor. On November 2, 2015, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which was converted to a Chapter 7 liquidation case on December 20, 2016. On June 21, 2016, in preparation for a planned multi-party mediation in the bankruptcy case, the parties stipulated to entry of an Order under Bankruptcy Rule 2004 for the Production of Documents by Debtor (the "Stipulation"). The Bankruptcy Court entered the Stipulated Order on June 22, 2016 (the "Production Order"). This Production Order required Debtor to produce to Appellee all the documents specified by the Stipulation by July 14, 2016, contemplating "all information and/or documents available to the Debtor or obtainable by the Debtor from his agents, representatives," etc. Relevant to this appeal, the Production Order required Debtor to produce:

> A. From January 11, 2011 to present, documents evidencing any compensation for services and/or

employee, retiree, consultant, or similar benefits provided to the Debtor, to the extent any such documents exist. These documents should include, but not be limited to, all documents reflecting rights to future compensation and/or benefits.

B. From January 11, 2011 to present, all records of wires, checks, or other transfers evidencing payments, or compensation or income of any kind attributable to Mr. Glieberman, made into any account held by Tracey Katzen, to the extent any such documents exist.

C. From January 11, 2011 to present, all statements of the American Express Platinum card (account ending in 0-16003), which is or was previously in the name of the Debtor; which have not been previously been produced to BR North, and all records, if any of Debtor's payments with respect to the same.

D. From April 1, 2015 through the present day, any and all documents of the real property development known as HRS Communities; Home Renewal Systems, LLC; Home Renewal Realty, LLC; Londonberry, LLC; and/or any other companies involving Tracey Katzen that relate to the Debtor, including, but not limited to, documents in the possession or control of the Debtor, reflecting any payments by these entities made to him, for him and/or on his behalf.

Exhibit A to Stipulation at pp 5-6.

From July 8, 2016 through August 15, 2016, Debtor produced certain documents to Appellee pursuant to the Production Order. However, Appellee believed Debtor failed to produce "any and all" documents

responsive to the quoted paragraph, and on August 17, 2016 filed a Motion Compel, for Contempt and Sanctions ("First Contempt Motion"). Appellee argued that Debtor could have complied with the Production Order, numerous exhibits in support of its argument. Appellee also moved for a shortened notice of hearing, pursuant to Bankruptcy Rules 9006(c) and The Bankruptcy Court granted an expedited hearing and scheduled the hearing for six days later on August 23, 2016.

    In its First Contempt Motion, Appellee pointed out that the Production Order required bank records of Debtor's daughter Tracey Katzen to be produced, as well as the bank records and other records of numerous Debtor-related entities. Appellee established that Debtor previously used Tricia Gregart, the long-time controller of his real estate projects, to obtain documents regarding his personal financial affairs and those of the companies he was affiliated with for the Bankruptcy Court. Appellee attached exhibits to its motion, including (1) documentary evidence including public records, corporate filings and newspaper articles related to Debtor, daughter, and his new projects which had not been revealed to the Bankruptcy Court or creditors, and (2) deposition testimony that revealed

Debtor's role in founding, managing or controlling the numerous companies whose documents he refused to produce.

For example, Appellee alleges that Debtor formed more than 15 real estate development and other investment companies in the last few years, listing his daughter Tracey Katzen as registered agent. Appellee's source for this allegation is the Michigan Department of Licensing and Regulatory Affairs. One project, the Grandview Marquette Apartment Project, was allegedly led by Debtor, using several of his real estate companies. This project has been in the works for over a year and closed on June 3, 2016. Appellee ties several of Debtor's companies to the project by citing to newspaper articles and the Warranty Deed for the purchase of the property, including Home Renewal Systems, LLC, Grandview Marquette developer, LLC, GMHRR, LLC, and Grandview MT LLC.

In another example, Appellee documents that Debtor is known to be President and Manager of HRS Communities. HRS Communities developed the Clyde Smith Farms development, which represents 146 site condos. Appellee presented the deposition of Tricia Gregart that Debtor himself managed Clyde Smith Farms. Gregart further testified that although Tracey Katzen was held out as the principal of numerous companies,

including Londonberry, the management company over Clyde Smith Farms, she was not a manager and Debtor was really in charge. As for Ms. Katzen's duties for Home Renewal Realty, Clyde Smith and Londonberry, Gregart testified that Katzen funds them and sits in on Tuesday meetings. (Gregart dep., pp 158, 161). Beyond that, Ms. Gregart was "not sure" what Katzen did for the companies.

In its order granting Appellee's motion for expedited hearing, the Bankruptcy Court permitted any response to the First Contempt Motion to be raised at the hearing. Debtor did not file anything with the Bankruptcy Court in response to the First Contempt Motion, nor did it rebut any of Appellee's evidence at the hearing. The Bankruptcy Court found on the record that there was enough evidence that Debtor was able to obtain the documents set forth in the Production Order. On August 24, 2016, the Court ordered Debtor to produce all documents set forth in the Production Order, for all companies listed in that order, as well as for twenty-one other companies in which Debtor and his daughter are involved, by noon on August 26, 2016. Debtor produced some documents, but not all, and on September 9, 2016, Appellee filed a Second Motion to Compel, for Contempt and for Sanctions ("Second Contempt Motion"). The Bankruptcy Court granted

Appellee's Motion to Expedite Hearing, and set the hearing for eleven days later on September 20, 2016.  Debtor did not file a response to the Second Contempt Motion.  At the hearing, Debtor's counsel argued, without presenting any evidence, that his client lacked possession or control of of the documents, other than those that were previously produced.  Debtor's counsel also asserted that Debtor's interest in some of the businesses was misrepresented in the newspaper articles cited by Appellee.  The Court responded that the misinformation identified did not form the basis of her opinion. Counsel responded, "I don't have anything further to offer."

The Bankruptcy Court found Debtor in contempt of court for willfully failing to comply with the Court's August 24, 2016 Order.  The Court explained its reasons on the record:

> For reasons that were fully detailed in the first motion to compel, that being filed on August 17, 2016, I found, and I find today, that Mr. Glieberman has control over all documents that are requested by BR North in this case. . . . it is based on the very, very lengthy and thorough documentation of his involvement in Digim, the other enterprises that are owned by his children, all the exhibits about where documents are kept, the deliberate failure to disclose his wife's American Express card when it's clear that that's the American Express card that must be being used to fund the lifestyle that's being lived by the Gliebermans.

(Opinion p. 10-12). The Court made it clear that it found Appellee's arguments, as supported by the evidence submitted by Appellee, to be credible, while finding that Debtor's "protestations that he cannot obtain these records are not credible". *Id*.

The Court stated that Debtor "may purge himself of such contempt by producing, and is hereby Ordered again to produce, to counsel for BR North 223, LLC, all documents . . . ." Debtor has not produced the documents, but instead filed this appeal.

## STANDARD OF REVIEW

When a Bankruptcy Court's decision is appealed to the District Court, the District Court is bound by the Bankruptcy Court's findings of fact unless they are clearly erroneous. Bankr. Rule 8013. This Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. Rembert v. AT & T Univ. Card Serv. (In re Rembert), 141 F.3d 277, 280 (6th Cir. 1998).

A decision on a motion for contempt lies within the sound discretion of the court and is reviewed for an abuse of discretion. *Elec. Workers Pension Tr. Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 Cir. 2003). "Under this standard, a district court's decision is to be afforded

great deference; it will be disturbed only if the district court relied upon erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Id*.

To hold a litigant in contempt, the movant must produce clear and convincing evidence to show a violation of a definite and specific order of the court requiring the litigant to perform or refrain from performing a particular act or acts with knowledge of the court's order. *Id*. at 379 (citation omitted). "Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Id*. The contemnor must show "'categorically and in detail'" why they are unable to comply with the court's order. *Id*. (quoting *Rolex Watch U.S.A. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). The court must consider whether the contemnor took all reasonable steps within his power to comply with the court's order. *Id*.

ANALYSIS

I. Due Process

Debtor argues that he was denied due process where the Bankruptcy Court granted an expedited hearing, giving him a mere three business days to respond to the First Contempt Motion. Debtor suggests that the

- 9 -

appropriate remedy for inadequate process is that the Sanctions Order be set aside.

Appellee responds that Debtor waived this issue by raising it for the first time on appeal. Local Bankruptcy Rule 9006-1 provides that a party may apply *ex parte* for an order shortening another party's time for response. The Rule further provides that "[a] party aggrieved by such an order may move for a dissolution of the order." In this case there is no record of Debtor seeking a dissolution of the order expediting the hearing. When Appellee requested concurrence in the First Contempt Motion and motion for expedited hearing, Debtor did not expressly give his consent, but did concede to the expedited hearing date:

> Neither my client nor I are willing to consent to the Motion described in your email, nor the request for an expedited hearing. Notwithstanding that fact, I am already down in front of Judge McIvor next Tuesday on another matter, and will be out of the country the following week, so if you think the motion justifies an expedited hearing, I'd just as soon have it occur next week before I go on vacation.

(8/17/16 email of counsel).

Debtor clearly had notice of the hearing, and was also given an opportunity to be heard. The Bankruptcy Court's Orders Granting Hearing permitted responses to the Contempt Motions to be raised at the hearings themselves, thus giving Debtor the maximum time possible to

prepare. In this case, the evidence is clear that Debtor never sought dissolution of the order shortening time, never requested an adjournment of any hearing, never requested more time to prepare a response, never complained about a lack of due process before filing this appeal, and did attempt to offer any evidence to the Bankruptcy Court to rebut Appellee's evidence.

This Court finds that the Bankruptcy Court did not abuse its discretion in shortening the time that Debtor had to respond to the Contempt Motions. Furthermore, the Court finds that Debtor has not shown he was denied due process such that the Contempt Order should be set aside in this case.

II.     <u>Contempt Finding and Sanctions</u>

Debtor argues that the Bankruptcy Court's finding that he violated the Court's prior orders was clearly erroneous in that it reached factual findings based on little or no evidence that Debtor controls the entities required to produce the documents. Debtor argues that most of the evidence Appellee submitted to the Bankruptcy Court in support of its First Contempt Motion was not admissible because it was lacking in foundation and authenticity. For example, Exhibit I is a list of 24 entities and their respective resident agents. Only three of these entities list Debtor as the resident agent, while the remaining entities list Tracey Katzen as resident agent. However, the deposition testimony of Ms. Gregart is offered to explain that Ms. Katzen

does not act as a manager of the companies, while Debtor himself does. support its allegation that Debtor attempted to shield himself from income paid in his name by creating a web of direct and indirect payments through his daughter Ms. Katzen, Appellee offers Ms. Gregart's deposition that she has access to all company accounts "with which Mr. Glieberman has any connection whatsoever." Gregart dep. 138. Ms. Gregart testified that she moves money on an "as-needed basis" between the companies, including and from the accounts that are in the name of Tracey Katzen. Gregart dep. 137-139.

Debtor points out that the depositions of Ms. Gregart and Ms. Katzen contain conflicting testimony that creates an issue of fact regarding the management of the companies at issue. Nevertheless, the Bankruptcy Court found Appellee's explanation of the evidence submitted to be credible and sufficient to support a prima facie case that Debtor was able to comply with the Production Order. "[B]ased on all the information that has been provided by BR North, Mr. Glieberman still retains responsibility for many, many entities, . . ." August 23, 2016 Transcript at p. 13.

In order to hold a litigant in contempt, the movant must produce clear and convincing evidence to show a violation of a definite and specific order of the court requiring the litigant to perform or refrain from performing a particular act or acts with knowledge of the court's order. *Gary's Elec.*

*Serv.*, 340 F.3d at 379. The evidence submitted by Appellee, taken as a whole, supports Appellee's position that the Debtor had the ability to with the Court's order requiring him to produce the documents responsive the Production Order.

The burden then shifted to the Debtor to defend by coming forth with evidence showing in detail why he is unable to comply with the Court's order. As discussed, the record reveals no attempt by Debtor to present any evidence as to why he could not comply. The Bankruptcy Court was thus well within its discretion to conclude that Debtor violated its prior order.

## CONCLUSION

For the reasons stated above, the court DENIES Debtor/Appellant's appeal and AFFIRMS the Bankruptcy Court's Contempt Order.

Dated: April 14, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 14, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---